UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TERESA L. PRATHER,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN,<br><br>　　　　　Defendant. | CASE NO. 2:16-cv-00085-BHS-KLS<br><br>REPORT AND RECOMMENDATION REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS<br><br>NOTED FOR DECEMBER 16, 2016 |

Plaintiff has brought this matter for judicial review of defendant's denial of her application for disability insurance benefits ("DIB"). This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by *Mathews, Secretary of H.E.W. v. Weber*, 423 U.S. 261 (1976). For the reasons set forth below, the undersigned recommends that the Court reverse defendant's decision to deny benefits and remand this matter for further administrative proceedings.

<div align="center">FACTUAL AND PROCEDURAL HISTORY</div>

Plaintiff applied for DIB alleging she became disabled beginning January 18, 2003. Dkt.

13, Administrative Record ("AR") 10. Her application was denied on initial administrative review and on reconsideration. AR 10. At a hearing held before an Administrative Law Judge ("ALJ"), plaintiff appeared and testified, as did a vocational expert. AR 10. Plaintiff amended her alleged onset date to February 9, 2007, the day after another ALJ issued a decision denying plaintiff's earlier application for disability benefits. AR 10; *see also* AR 46-56. In a written decision, the ALJ determined that plaintiff could perform past relevant work, and therefore that she was not disabled. AR 10-16. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council, making that decision the final decision of the Commissioner of Social Security (the "Commissioner"). *See* AR 1; 20 C.F.R. § 404.981. Plaintiff appealed to the United States District Court for the Western District of Washington, and the matter was reversed and remanded based upon the stipulation of the parties. *See* AR 616-17; *Prather-Exum v. Astrue*, 2:11-cv-01458-MAT (W.D. Wash. April 18, 2012).

A second hearing was held before the same ALJ, ALJ Ruperta M. Alexis, on February 21, 2013, at which plaintiff, represented by counsel, appeared and testified, as did an impartial vocational expert and medical expert. AR 531-43. In a decision dated April 26, 2013, the ALJ determined plaintiff to be not disabled. *See* AR 541-43. The Appeals Counsel again declined to review the ALJ's determination. *See* AR 525-26. Plaintiff filed a second complaint in this Court seeking judicial review of the Commissioner's, and the matter was again reversed and remanded based upon the stipulation of the parties. *See* AR 1220-21, 1224; *Prather v. Colvin*, 2:13-cv-01858-RSL-JPD (W.D. Wash. April 3, 2014).

A third hearing was held before a different ALJ,[1] ALJ Timothy Mangrum, on December 18, 2014. AR 1118. Plaintiff, represented by counsel, testified as did a vocational expert. AR

---

[1] Unless noted otherwise, when the Court refers to "the ALJ" throughout this Report and Recommendation, the Court is referring to the third ALJ's decision.

REPORT AND RECOMMENDATION- 2

1 | 1118. In a decision dated June 30, 2015, the ALJ determined plaintiff to be not disabled. *See* AR

2 | 1118-26. The Appeals Council declined to assume jurisdiction of the ALJ's decision. *See* AR

3 | 1104. Plaintiff sought review of the ALJ's decision in this Court. *See* Dkt. 3. The administrative

4 | record was filed with the Court on July 20, 2016. *See* Dkt. 13. The parties have completed their

5 | briefing, and thus this matter is now ripe for the Court's review. *See* Dkts. 19, 20, 21.

6 |      Plaintiff argues the ALJ's decision should be reversed and remanded for further

7 | administrative proceedings because the ALJ erred in (1) evaluating the opinion of William

8 | Spence, M.D. regarding plaintiff's inability to meet the requirements of sedentary work;

9 | (2) finding plaintiff capable of performing past relevant work; and (3) failing to properly

10 | consider plaintiff's side effects related to her medications. *See* Dkt. 19, p. 1. For the reasons set

11 | forth below, the undersigned agrees the ALJ erred in failing to properly consider the side effects

12 | of plaintiff's medications, failing to properly consider the medical opinion of the testifying

13 | medical expert, and failing to resolve conflicts between the Dictionary of Occupational Titles

14 | and the vocational expert's testimony, and therefore erred in determining plaintiff to be not

15 | disabled. Also for the reasons set forth below, however, the undersigned recommends that while

16 | defendant's decision to deny benefits should be reversed on this basis, this matter should be

17 | remanded for further administrative proceedings.

18 | <center>DISCUSSION</center>

19 |      The Commissioner's determination that a claimant is not disabled must be upheld if the

20 | "proper legal standards" have been applied, and the "substantial evidence in the record as a

21 | whole supports" that determination. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986);

22 | *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v.*

23 | *Sullivan*, 772 F.Supp. 522, 525 (E.D. Wash. 1991). "A decision supported by substantial

24 | evidence nevertheless will be set aside if the proper legal standards were not applied in weighing

the evidence and making the decision." *Carr*, 772 F.Supp. at 525 (citing *Brawner v. Sec'y of Health and Human Sers.*, 839 F.2d 432, 433 (9th Cir. 1987)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Batson*, 359 F.3d at 1193. The Commissioner's findings will be upheld "if supported by inferences reasonably drawn from the record." *Batson*, 359 F.3d at 1193.

Substantial evidence requires the Court to determine whether the Commissioner's determination is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," that decision must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). That is, "[w]here there is conflicting evidence sufficient to support either outcome," the Court "must affirm the decision actually made." *Allen*, 749 F.2d at 579 (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).

I. The ALJ's Evaluation of the Side Effects of Plaintiff's Medications

Plaintiff argues that the ALJ erred in failing to consider the side effects of her medications when formulating the RFC. *See* Dkt. 19, pp. 7-10. Throughout the evidence of record, plaintiff testified and stated that her medications cause side effects—including memory loss, drowsiness, and inability to drive—limiting her functional abilities. *See* AR 26, 130, 136-36, 156, 235, 273, 340, 576. Plaintiff's spouse, Harvey Exum, also offered a third-party function report opining that plaintiff suffers from medication side effects. *See* AR 161, 163, 184, 194, 197, 199.

Here, with respect to plaintiff's medication side effects, the ALJ noted that plaintiff "testified that she had had memory and concentration problems, due in part to her use of

1 | medication, since 2007." AR 1123. After discussing plaintiff's additional testimony and
2 | statements regarding her functional limitations, the ALJ noted that he found plaintiff's
3 | statements "not entirely credible." AR 1123. The ALJ also incorporated the April 2013 decision
4 | regarding plaintiff's credibility as well as the remainder of ALJ Alexis's decision. AR 1123,
5 | 1125. ALJ Alexis similarly noted that plaintiff testified regarding symptoms and limitations
6 | caused by medication side effects and also found that plaintiff's statements were not entirely
7 | credible. AR 537-38. In evaluating plaintiff's husband's third-party function report, ALJ Alexis
8 | noted that "[t]here is no evidence of decreased cognitive functioning during the period at issue
9 | related to her narcotic use or otherwise." AR 540.

10 | The Court finds that the ALJ failed to properly consider plaintiff's medication side
11 | effects. An ALJ should consider all factors that might have a significant impact on an
12 | individual's ability to work, including side effects of medications. SSR 96–7p; *Erickson v.*
13 | *Shalala*, 9 F.3d 813, 817-18 (9th Cir. 1993) (citing *Varney v. Secretary of HHS*, 846 F.2d 581,
14 | 585 (9th Cir. 1987) (superseded on other grounds). Indeed, "the side effects of medications can
15 | have a significant impact on an individual's ability to work and should figure in the disability
16 | determination process." *Varney*, 846 F.2d at 585. Under *Varney,* when the ALJ disregards the
17 | "claimant's testimony as to subjective limitations of side effects, he must support that decision
18 | with specific findings similar to those required for excess pain testimony, as long as the side
19 | effects are in fact associated with the claimant's medications." *Id.*; *see generally Erickson*, 9 F.3d
20 | at 818. Here, although the ALJ generally noted that plaintiff had "memory and concentration
21 | problems, due in part to her use of medication", *see* AR 1123, the ALJ did not make specific
22 | findings related to plaintiff's testimony and statements regarding her medication side effects. *See*
23 | *id.*

24 |

Defendant argues that the ALJ properly considered the side effects of plaintiff's medications because the ALJ noted plaintiff's statement and then found her less than credible. *See* Dkt. 20, p. 4. However, as noted by plaintiff, this case is similar to the Ninth Circuit's ruling in *Varney*. In *Varney,* the claimant testified about the side effects of her medications. The ALJ acknowledged Varney's testimony but did not make any specific findings with regard to side effects. *Id.* The Ninth Circuit Court of Appeals held:

> if the Secretary chooses to disregard a claimant's testimony as to the subjective limitations of side effects, he must support that decision with specific findings similar to those required for excess pain testimony, as long as the side effects are in fact associated with the claimant's medication(s). Because no such findings were made here, we remand the matter so that, as in the case of the pain testimony, the ALJ may either accept Varney's evidence regarding side effects or make specific findings rejecting such evidence. Again, any specific findings rejecting her testimony must be supported by the record and will be subject to further review by the courts.

*Id.* at 585-86 (citations omitted). The *Varney* decision applies squarely to plaintiff's case. As in *Varney*, although plaintiff testified and offered statements about her medication side effects, the ALJ committed reversible error by failing to make clear and convincing findings regarding the side effects and by failing to consider the impact of those side effects on plaintiff's ability to work. *See*, *e.g.*, *Erickson*, 9 F.3d at 817-18 (citing *Varney*, 846 F.2d at 585); *Frenick v. Sullivan*, 953 F.2d 1386 (9th Cir. 1992); *Jackson v. Colvin*, No. C13-1560-TSZ-BAT, 2014 WL 2154260, at *2–3 (W.D. Wash. May 22, 2014); *Salazar v. Astrue*, 859 F. Supp. 2d 1202, 1228 (D. Or. 2012).

II.  The ALJ's Evaluation of the Medical Evidence

Plaintiff also maintains that the ALJ erred in evaluating the medical opinion of medical expert William Spence, M.D., who testified at the 2013 hearing. *See* Dkt. 19, pp. 3-4. The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence

in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." *Id.* at 603.

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." *Id.*; *see also Cotter v. Harris*, 642 F.2d 700, 706-07 (3rd Cir. 1981); *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).

Dr. Spence testified at the 2013 hearing as a medical expert. AR 557-72. He diagnosed plaintiff with chronic pain syndrome, moderate obstructive sleep apnea, and addiction to opiates and tobacco. AR 557. In relevant part, Dr. Spence testified:

> I noted that … earlier examiners [and] early records (INAUDIBLE) that she would be eligible for a sedentary level of work and I think that, that is really minimizing it. I think that she could do much more than that. Certainly consideration for a light level with some restrictions (INAUDIBLE) lifting and carrying because she has had surgery in her lower back. She does have some degenerative changes and I think that ought to be respected so I would put that much limit. But actually I think she would have a hard time in a [] sedentary position due to the fact that she's a very extremely active restless lady and I don't know that she could sit still that way. So I think a light level would be much more appropriate.

AR 561-62.

The ALJ determined that plaintiff has the RFC to perform sedentary work, finding that plaintiff can lift 10 pounds occasionally and frequently and sit for six hours in an eight-hour workday. AR 1122. The ALJ did not specifically discuss Dr. Spence's opinion but noted that he "adopt[s] and incorporate[s] the opinion analysis contained in Judge Alexis's April 26, 2013 decision." AR 1125. In the April 2013 decision, ALJ Alexis gave "significant weight" to Dr. Spence's medical opinion. AR 541. ALJ Alexis noted that Dr. Spence "testified that objective findings showed some degenerative changes but there is no clinical evidence to support the claimant was unable to work during the period at issue." AR 541. ALJ Alexis also noted that Dr. Spence "had an opportunity to review the record" and that "[h]is opinion is consistent with objective and physical exam findings." AR 541-42.

Plaintiff argues that the ALJ failed to consider or incorporate "Dr. Spence's reservations about [plaintiff's] ability to meet the requirements of sedentary work" and argues that Dr. Spence found that plaintiff "was unable to sit for the remaining six hours as generally required in sedentary occupations." Dkt. 19, p. 4. Defendant argues that because Dr. Spence opined that plaintiff was capable of light work, a finding that plaintiff can perform sedentary work necessarily incorporates Dr. Spence's opined limitations. Dkt. 20, p. 3. Defendant also asserts that Dr. Spence was opining that plaintiff would be better suited for light work because she is so active, not because she had functional limitations limiting her to light work over sedentary work. *See id.* In her reply, plaintiff asserts that the Commissioner's argument is "based on her mistaken assumption that the ability to perform light work *necessarily* includes the ability to perform sedentary work." Dkt. 21, p. 1 (emphasis in original; quotations omitted).

The residual functional capacity is the most a claimant can do despite existing limitations. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also* 20 C.F.R. § 404, Subpart P, App. 2 §

200.00(c). As noted by the Ninth Circuit, "Social Security Regulations define residual functional capacity as the 'maximum degree to which the individual retains the capacity for *sustained* performance of the physical-mental requirements of jobs." *Reddick*, 157 F.3d at 724 (quoting 20 C.F.R. § 404, Subpart P, App. 2 § 200.00(c)) (emphasis added by Ninth Circuit); *see also* SSR 96-8p, 1996 SSR LEXIS 5 at *5. In evaluating whether or not a claimant satisfies the disability criteria, the Commissioner evaluates the claimant's "ability to work on a sustained basis." *See* 20 C.F.R. § 404.1512(a). The regulations further specify: "When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b); *see also* 20 C.F.R. § 404.1545(c) (mental abilities). The determination regarding an RFC depends on a proper evaluation of the medical evidence.

      Here, the Court disagrees with plaintiff's characterization that Dr. Spence opined that plaintiff could not sit for six hours in an eight hour day. Indeed, Dr. Spence noted that he thought sedentary work was "minimizing" plaintiff's limitations and that she could perform at the "light level" of work. *See* AR 561-62. Nevertheless, the Court finds that the ALJ failed to consider significant probative evidence of Dr. Spence's testimony that "due to the fact that [plaintiff is] a very extremely active restless lady and I don't know that she could sit still that way" for a sedentary position. *See* AR 561-62. Here, it is unclear whether the ALJ considered Dr. Spence's testimony regarding plaintiff's perceived inability to "sit still" for a sedentary job. Moreover, the Court cannot determine whether Dr. Spence intended to include a functional limitation regarding plaintiff's ability to "sit still." Regardless, to the extent Dr. Spence's testimony is ambiguous regarding plaintiff's ability to "sit still" in a sedentary job, the ALJ has a duty "to fully and fairly develop the record and to assure that the claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations omitted). "Ambiguous evidence, or the

1 ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence,
2 triggers the ALJ's duty to conduct an appropriate inquiry." *Id.* (citing *Smolen v. Chater*, 80 F.3d
3 1273, 1288 (9th Cir. 1996)) (quotations omitted). Thus, to the extent the ALJ finds Dr. Spence's
4 testimony ambiguous, the ALJ shall further develop the record.

III. The ALJ's Evaluation of Plaintiff's Past Relevant Work

Finally, Plaintiff argues that the ALJ erred in finding her capable of performing past relevant work as a "business owner." Dkt. 19, pp. 4-6. At the third hearing, the vocational expert testified that he found plaintiff "was a business owner overall," classifying such work as falling under Dictionary of Occupational Titles ("DOT") § 185.167-046, which is "considered light and skilled." AR 1177. After the vocational expert offered this testimony, the ALJ asked him an extended hypothetical question in which he described a person with plaintiff's limitations, including the limitation that she is limited to "sedentary type jobs" and can "carry out detailed and complex tasks." *See* AR 1179-81. The vocational expert opined that a person with such limitations can perform the past jobs which he had previously described, which necessarily includes business owner. AR 1180.

The DOT sets forth job requirements for job descriptions, including the strength required for the jobs. *See*, *e.g.*, *Zavalin v. Colvin*, 778 F.3d 842, 844 (9th Cir. 2015). DOT § 185.167-046, cited by the vocational expert as work as a "business owner", is titled "Manager, Retail Store" and is classified as light work. *See* DOT (4th ed. 1991) § 185.167-046, 1991 WL 671299. The DOT specifically notes that "[p]hysical demand requirements are in excess of those for Sedentary Work." *Id.*

Plaintiff avers that the ALJ erred by not resolving the conflict between the vocational expert's testimony and the DOT. Dkt. 19, p. 5. The undersigned agrees that "[w]hen there is an apparent conflict between the vocational expert's testimony and the DOT—for example, expert

1 testimony that a claimant can perform an occupation involving DOT requirements that appear
2 more than the claimant can handle—the ALJ is required to reconcile the inconsistency." *Zavalin*,
3 778 F.3d at 846 (citing *Massachi v. Astrue,* 486 F.3d 1149, 1153–54 (9th Cir. 2007); *see also*
4 *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1002 (9th Cir. 2015). Here, the ALJ did not
5 ask the vocational expert to explain how a person who is limited to sedentary work can perform a
6 job requiring light work. *See* AR 1176-87. Further, in his decision, the ALJ relied upon the
7 vocational expert's testimony that a person with plaintiff's limitations can perform DOT
8 § 185.167-046, which the vocational expert termed "business owner", but the ALJ did not
9 explain whether plaintiff possessed the strength to perform this occupation. *See* AR 1125. Thus,
10 the ALJ erred in failing to resolve the conflict between plaintiff's limitation to sedentary work
11 with the demands of the job the vocational expert called "business owner." *See Rounds*, 807 F.3d
12 at 1003 ("There was an apparent conflict between [plaintiff's] RFC, which limits her to
13 performing one- and two-step tasks, and the demands of Level Two reasoning, which requires a
14 person to '[a]pply commonsense understanding to carry out detailed but uninvolved written or
15 oral instructions.'"). Moreover, the Court notes that DOT § 185.167-046 is actually a job listing
16 for "Manager, Retail Store," not a "business owner" as the vocational expert testified. *See* Dkt.
17 19, p. 5. Thus, if necessary upon remand, the ALJ shall resolve any inconsistency between the
18 vocational expert's testimony and the DOT, including descriptions of the jobs identified by the
19 vocational expert and the strength level required by the job and the ALJ's findings.
20     IV. <u>This Matter Should Be Remanded for Further Administrative Proceedings</u>
21     The Court may remand this case "either for additional evidence and findings or to award
22 benefits." *Smolen*, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the
23 proper course, except in rare circumstances, is to remand to the agency for additional
24 investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations

omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." *Id.*

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292; *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d 1273 at 1292; *McCartey v. Massanari*, 298 F.3d 1072, 1076–77 (9th Cir. 2002). Because issues still remain in regard to the medical opinion evidence and plaintiff's testimony regarding the side effects of her medications, remand for further consideration of these issues is warranted.

## CONCLUSION

Based on the foregoing discussion, the undersigned recommends the Court find the ALJ improperly concluded plaintiff was not disabled. Accordingly, the undersigned recommends as well that the Court reverse the decision to deny benefits and remand this matter for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk

1 | is directed set this matter for consideration on **December 16, 2016**, as noted in the caption.

2 | DATED this 30th day of November, 2016.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION- 13